```
               UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLUMBIA


SAE PRODUCTIONS, INC.,          :
                                :
        Plaintiff,              :
                                :
     v.                         :  Civil Action No. 07-0866 (JR)
                                :
FEDERAL BUREAU OF INVESTIGATION, :
                                :
        Defendant.              :
```

**MEMORANDUM**

The plaintiff in this FOIA action, SAE Productions, Inc., is a news organization that produces documentaries and articles relating to terrorism. In 2007, SAE's president, Steven Emerson, submitted eight FOIA requests to FBI headquarters in Washington, D.C., and to various FBI field offices seeking documents pertaining to the Council on American Islamic Relations (CAIR), a program called the Partnership for Prevention and Community Safety Initiative (PfP), and a December 9, 2006, town hall meeting bringing together Muslim community leaders and FBI officials in Springfield, Illinois. SAE's complaint challenges the adequacy of the searches that the FBI conducted in response to its requests. Currently pending before the Court is the FBI's motion for summary judgment.

**I. Standard of Review**

On a motion for summary judgment in a FOIA action, the agency "must show beyond material doubt that it has conducted a

search reasonably calculated to uncover all relevant documents." Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  "[T]he issue is <u>not</u> whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate."  Perry v. Block, 684 F.2d 121, 128 (D.C. Cir. 1982) (per curiam) (emphasis in original). At the summary judgment stage, "the court may rely on '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'"  Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting Oglesby v. United States Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1983)).  Although summary judgment is inappropriate where the requester has made a "well defined request[]" and there are "positive indications of overlooked materials," Founding Church of Scientology v. National Sec. Agency, 610 F.2d 824, 837 (D.C. Cir. 1979), agency affidavits enjoy a presumption of good faith that cannot be rebutted by mere speculation as to the existence of other, undiscovered documents.  Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981).

## II. Factual Background and Analysis

The FBI's responses to each of plaintiff's eight requests are set out in two declarations by David M. Hardy, the Chief of the Record/Information Dissemination Section at FBI headquarters in Washington, D.C.  In its first request, addressed to FBI's Cleveland Field Office on January 2, 2007, plaintiff referenced a December 2006 news story about a CAIR training session in Cleveland designed to raise awareness about the "principles and culture of Islam" for officials from the FBI and the Cleveland police department.  First Hardy Decl. at ¶ 5; id., Ex. A [Dkt. 10].  The plaintiff requested:

> 1) copies of any written, video or audio materials used in the session; 2) copies of any and all correspondence between the FBI and CAIR associated with the session; 3) copies of any reports, memos, emails or other internal FBI documents related to the session; 4) the identity information of the CAIR presenter personnel at this session; and 5) copies of any attendee evaluation forms/documents that may have been prepared resulting from this session.

Id.  Two days later, on January 4, 2007, plaintiff's second FOIA request was submitted to FBI headquarters.  This request described a program called the Partnership for Prevention and Community Safety (PfP) that aimed to "identify and help implement promising practices for building relationships between federal, state, and local law enforcement and American Muslim, Arab, and Sikh communities."  Id., Ex. H.  Plaintiff asked for "all memos,

email, correspondence, videos, audio tapes, reports, etc. that the FBI has related to the PfP program, including outreach programs involving the agency." Id.  Plaintiff's third request was made to FBI headquarters on January 9, 2007.  A press release from the FBI describing a day-long town hall meeting with Muslim leaders in Springfield, Illinois, was attached to this request for "copies of all files and records" from the town hall meeting, "a list of the attendees with their names and affiliation," and "copies of any correspondence, memos, and/or email related to this meeting, as well as a copy of any video tape material made of the meeting." Id., Ex. FF.  On March 5, 2007, plaintiff sent an the same request to the FBI's Springfield field office. Id., Ex. LL.  Plaintiff's fifth, sixth, seventh, and eighth document requests were directed, respectively, to the FBI's Boston, Los Angeles, Detroit, and San Diego field offices on March 5, 2007. These letters requested the same PfP-related documents that plaintiff had already requested from FBI headquarters on January 4, 2007. Id., Ex. M, Ex. N, Ex. V, Ex. Z.

    David Hardy's declarations detail both the scope of the FBI's searches and the documents produced.  In response to each request, the FBI searched the automated indices of the main files in its Central Records System (CRS) either at FBI headquarters or the field office to which the FOIA request was directed. First Hardy Decl. at ¶ 55 [Dkt. 13].  The FBI also conducted searches

of its active and inactive indexes in both its headquarters and field office record systems. Copies of some of the search slips documenting when and how particular databases were searched are attached to Mr. Hardy's second declaration. See Second Hardy Decl., Ex. A & E. [Dkt. 19]. In addition, FBI records staff sent an "electronic communication" to personnel in the Cleveland, Boston, Los Angeles, Detroit, San Diego, and Springfield field offices as well as to the Offices of Public Affairs and Congressional Affairs at FBI headquarters requesting that employees search for any "non-serialized potentially responsive documents." First Hardy Decl. at ¶ 53. Finally, the FBI's Office of General Counsel also followed up by email and telephone with individuals still employed by the FBI who plaintiff suggested might have personal knowledge of additional documents related to the PfP initiative. Second Hardy Decl. at ¶¶ 35-36, Ex. Q.

  As a result of these searches, the plaintiff received: 1) 51 pages of materials pertaining to CAIR, including news articles and organizational pamphlets; 2) 92 pages of documents on the Springfield town hall meeting, including drafts of the meeting invitation and agenda, a letter from an individual declining the invitation, a list of organizational affiliations of those attending, photos from the event, and an internal FBI memo summarizing the meeting afterwards and addressing cost

reimbursement issues; and 3) a four-page news article on the PfP Safety Initiative.  See First Harding Decl. ¶¶ 58, 59; see also [Dkt. 13, Ex. 7].

The specific details contained in the Hardy declarations about the dates, locations, methodologies, and results of the searches demonstrate that the FBI's efforts were reasonably calculated to uncover all relevant documents. Weisberg v. Dept. of Justice, 745 F.2d 1476 (D.C. Cir. 1984). Resisting this conclusion, the plaintiff argues that there is sufficient countervailing evidence to cast material doubt on the adequacy of the search.  First, the plaintiff cites various regulations that deal with agency funding for certain educational events and argues that, in light of these regulations, there should have been additional documentation regarding FBI agents' attendance at the CAIR forum in Cleveland.  However, as the government points out, there is nothing in the record to suggest that the CAIR event was anything other than free for agents to attend nor that agents, in using their assigned cars to drive to the forum, would have had any need to submit travel vouchers. Second, the plaintiff argues that agents' involvement with the PfP program may have constituted "outside employment" for which they may have been compensated, requiring documentation under another set of federal regulations.  Plaintiff bases this theory on two letters from agents to a law professor heading up the PfP

program, Deborah Ramirez.  The first letter, from Agent Michael Rolince, merely thanks Professor Ramirez for materials received and expresses an interest in future collaboration.  The second letter, from Agent Kenneth Kaiser, is careful to say that "federal law does not permit [the FBI] to advocate for, or endorse, a particular organization" but goes on to state that the FBI would nonetheless be willing to help in strengthening relationships between law enforcement and those in Arab, Muslim and Sikh communities.  [Dkt. 13, Ex. 3].  Nothing in either of these letters supports plaintiff's theory about outside employment and documentation thereof.  Third, the plaintiff points to two newspaper articles stating that the FBI made, but ultimately rescinded, a $1 million dollar pledge to fund the PfP program.  [Dkt. 13, Ex. 4-5].  If the coverage that plaintiff has submitted is accurate, it is conceivable that there might be additional, undisclosed documentation on the PfP initiative.  But it is well-established that the conceivable existence of other documents is not enough to defeat a motion for summary judgment.  See Perry, 684 F.2d at 128.  "When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document

- 7 -

extant." Safecard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

Based on its belief that the FBI must have funding documentation regarding a program that it never actually funded, plaintiff seeks discovery to determine whether "the FBI's pledge of $1 million towards a training program based on the PfP model constituted a budget request for a training program" for which it supposes one set of federal regulations would have been applicable or "an agreement awarding funding to an educational institution to host the program" which would result in the applicability of a different set of regulations. [Dkt. 13 at 20]. Plaintiff does not explain how the hypothetical relevance of any of the regulations it cites informs the reasonableness of the FBI's searches. Importantly, plaintiff does not argue that the applicability of one or another set of regulations would mean that the FBI should have searched additional records systems that would be likely to contain responsive materials. Discovery is not warranted in these circumstances. See Safecard, 926 F.2d at 1200 ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'") (quoting Ground Saucer Watch,, 692 F.2d at 771).

**III. Conclusion**

Because the FBI has conducted reasonable searches for documents responsive to plaintiff's FOIA requests, its motion for summary judgment [Dkt. 10] will be **granted**.  An appropriate order accompanies this memorandum.


                                    JAMES ROBERTSON
                               United States District Judge